## SOUTHERN RAILWAY COMPANY *v.* WOOD.

1. When a railway company sells a round-trip ticket, which provides that it shall not be good for return passage unless the original purchaser shall procure the same to be signed and stamped by an agent of the company at the point of destination, and shall use the ticket on the date it is so signed and stamped, it is incumbent upon the company to have present, a reasonable time before the arrival of trains on which the ticket would be good for passage on any day upon which the purchaser might see fit to use it, an agent authorized to sign and stamp the ticket in the manner therein provided. Upon the failure by the company to have present at such time, on any day the original purchaser of the ticket sees fit to return, an agent so authorized, such purchaser, after having, on the day he desired to return, used due diligence to find some agent of the company authorized to sign and stamp his ticket so as to make it good for return passage, has authority to board the train without having the ticket so signed and stamped, and, upon explanation of the facts to the conductor, is entitled to ride upon the train; and his expulsion therefrom under such circumstances is a tort for which the company will be liable in damages.

2. The fact that a passenger holding a ticket of the character above referred to, and who has been expelled from the train, returns to the point where he boarded the train and has the ticket signed and stamped as required within the time limit fixed therein, and uses the same in this condition for return passage on another train, does not waive or extinguish any right he might have for the wrong committed in expelling him from the train before the ticket was so signed and stamped.

3. There was no error in the charges complained of, or in refusing to charge as set out in the motion for a new trial. The evidence warranted the verdict, which, under the facts appearing in the record, was not so excessive as to authorize this court to reverse the judgment of the trial court refusing to set it aside.

LUMPKIN, P. J., concurring specially.

Argued October 17, — Decided November 7, 1901.

Action for damages. Before Judge Reece. City court of Floyd county. February 13, 1901.

*Shumate & Maddox, G. A. H. Harris & Son,* and *R. L. Chamlee,* for plaintiff in error. *Seaborn & Barry Wright,* contra.

COBB, J. Wood sued the railway company for damages claimed to have been sustained on account of having been ejected from one of the defendant's trains by its conductor. The trial resulted in a verdict for the plaintiff for $450. The defendant made a motion for a new trial, which was overruled, and the case is here upon a bill of exceptions assigning error upon the overruling of this motion.

1. It appeared at the trial that the plaintiff had purchased a ticket from Atlanta to Rome and return at a reduced rate of fare, at the same time entering into a special contract with the company. This contract contained, among others, the following stipulations : " This ticket shall not be good for return passage unless the holder identifies him or herself by signature on back hereof and otherwise as original purchaser to the satisfaction of the agent of the terminal line at destination of ticket; and when officially signed and stamped by said agent, this ticket shall then be good for return passage of the original purchaser only, *leaving destination only on date so stamped and cancelled on back.*" The ticket was purchased on December 23, 1899, and was good for return passage until January 1, 1900. There was a train which passed Rome destined for Atlanta, upon the days on which the ticket was good for return passage, at 1:30 o'clock A. M. each day. The plaintiff decided to return to Atlanta on this train on December 25. As his ticket provided that before it would be good for return passage it must be

dated and stamped by the defendant's agent at Rome, he went to the agent of the defendant at the depot at Rome at which he had disembarked from the train about 12 o'clock of the night of the 24th. No one was present at the station authorized to validate his ticket and no one appeared prior to the arrival of the train for Atlanta, which on that occasion arrived somewhat later than its schedule time. His business being of a nature which required his presence in Atlanta on that day, he boarded the train, and tendered the unvalidated ticket to the conductor, at the same time explaining the circumstances which prevented him from having it dated and stamped in accordance with the terms of his contract. The conductor refused to accept the ticket, and ejected the plaintiff from the train. An examination of the stipulation in the contract above quoted shows that it was distinctly provided that the plaintiff could leave Rome only on the date on which the ticket was dated and stamped by the agent. In the absence, therefore, of any notice to the plaintiff that he was expected or required to repair to the depot to have his ticket validated at some time prior to the day on which he intended to return, it was incumbent upon him to endeavor to have the ticket validated only on that day. There is nothing in the evidence showing that he had such notice, and consequently he was not at fault in waiting until the day he intended to leave, to apply to the agent to have his ticket dated and stamped. The evidence shows that he went to the depot for this purpose at the very earliest time of that day it was possible for him to go, which was about one and one half hours before the train was scheduled to arrive.

It has been repeatedly held by this court that when a passenger holds a contract for return passage, of the character involved in the present case, and when he has done everything that ordinary prudence and diligence would require to obtain a validation of the ticket for return passage, he is authorized to enter the train with the ticket unvalidated, and is entitled to ride thereon, upon explaining to the conductor the circumstances which prevented him from having the ticket validated. See *Barlow* v. *Railroad Co.*, 104 *Ga.* 213, and cases cited. Following the principle laid down in these cases, we are compelled to hold in the present case that the plaintiff had a right to enter the train and ride upon his ticket, notwithstanding it was unvalidated, and that the conductor had no right

to eject him therefrom.  Under the contract the company was under a duty to provide him a method of having his ticket validated at some time between midnight and the arrival of the train, for the reason that the ticket when validated was good for passage on this train, and the contract provided that the ticket must be used on the day it was validated.  In other words, the undertaking on the part of the company amounted to a contract to provide a way for the plaintiff to have his ticket validated upon any day that he desired to return to Atlanta upon one of its trains upon which the ticket would be good for passage.  Its failure to have some one during the early hours of the morning of the 25th of December to validate tickets for passengers who desired to take the train passing at that point relieved the plaintiff from the necessity of having the ticket validated, and, under the principle of the decisions above referred to, authorized him to board the train and demand that he be carried on the ticket unvalidated.  It was said by one of the witnesses for the company that there was a custom in Rome to validate tickets and date them ahead so as to meet the very contingency which confronted the plaintiff in this case; but there was not a particle of evidence either that notice of this custom was brought home to the plaintiff, or that any effort was made by any agent of the company on the previous day to validate his ticket and date it ahead.  The plaintiff had a right to board the train and ride upon his ticket in the condition in which he tendered it to the conductor, and his expulsion from the train was a tort of which he had a right to complain.

2.  It appeared that the plaintiff, after having been expelled from the train, returned to Rome on another train of the defendant, had his ticket properly validated, and used it for return passage on one of the trains of the defendant, which returned later.  It is claimed by counsel for the plaintiff in error that this conduct on the part of the plaintiff amounted to a waiver of all claim for damages on account of his expulsion from the train at the time he attempted to ride upon the ticket before it was validated.  We do not understand upon what principle this conduct would amount to a waiver of damage resulting from a complete wrong which had taken place before.  He had a right to ride upon the unvalidated ticket under the circumstances, and the fact that this right was not recognized and he was compelled to return to Rome in order to comply with

the terms of the company's agent, which under the circumstances he had no right to make, does not in any way amount to an admission that he was wrong in entering the train with his ticket unvalidated, or that he was willing to relieve the company from the consequences of his wrongful expulsion from the train. The time limit on the ticket had not expired, and certainly the fact that the company had been guilty of a gross outrage upon him in not recognizing his right to ride when under the law he was entitled to ride would be no reason for holding that he had forfeited all rights under the ticket notwithstanding the failure of the company to recognize them on the day and on the train upon which he attempted to ride as a passenger. We are unable to see one single element of waiver of the previous wrong by anything that the plaintiff did in having his ticket validated and using it for passage in that condition.

3. There was no error in the charges complained of, or in the refusals to charge. The case was one in which a charge on the subject of punitive damages was proper; and the verdict, under the circumstances of the case, was not excessive. The plaintiff was ejected from the train in the early hours of a dark, rainy morning, at a place with which he was unfamiliar, and four miles from Rome. He had offered to secure with a diamond ring the payment of his fare to the conductor when he reached Atlanta. He had fully explained to the conductor why he had failed to have his ticket validated, and offered to make a showing to the conductor which would satisfy him that he was the original purchaser of the ticket. He remarked to the conductor: " I have paid for this matter, and I am going; and if you put me off, you will have to get a little help about it." The conductor responded that he had help. When the train stopped he came back and touched plaintiff on the shoulder, and said, " Are you going to get off, or have me put you off?" Plaintiff replied, " I am going to let you put me off," and as they were coming back said, " I will go and risk the consequences in the woods." There were one or two ladies and two old gentlemen in the car at the time, and plaintiff turned around and took the address of these gentlemen. When it appears to us that one who had a legal right to ride upon a train has been wrongfully expelled therefrom and held up by such expulsion before the passengers on the train as one who was trying to ride thereon without

lawful right or authority and subjected to the mortification that such conduct on the part of the company's agents would necessarily bring about in the case of any young man of sensibility and pride, we can not say as matter of law that $450 is too much to pay him as compensation for the outrage thus committed upon him. It may be that if we had been upon the jury we would have taken the view that a less amount would be full compensation for the wrong; but the law has reposed in the jury the right to deal with these matters, and we have no authority to interfere with their finding on the subject, when it has been approved by the trial judge, unless the amount involved is so great as to suggest bias and prejudice on their part. In the present case we can not say this is true.

*Judgment affirmed. All the Justices concurring.*

LUMPKIN, P. J. I concur in the judgment because, under the decision of this court in *Head* v. *Georgia Pacific Railway Co.*, 79 *Ga.* 358, the law of the main question is correctly stated in the foregoing opinion. I still think that decision was wrong, and in this connection refer to the concurring opinion which I filed in *Morse* v. *Southern Railway Co.*, 102 *Ga.* 306.